E-FILED
Monday, 02 November, 2015 09:28:35 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MATTHEW G. SULLIVAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15-1280 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## O R D E R

This matter is now before the Court on Petitioner, Matthew G. Sullivan's ("Sullivan"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Sullivan's § 2255 Motion [1] is DENIED.

### BACKGROUND

On August 22, 2012, Sullivan was indicted on a charge of conspiracy to manufacture, distribute, and possess with the intent to distribute more than 280 grams of crack cocaine. In February 2014, he was also charged in a superceding indictment with conspiracy to distribute and possess with the intent to distribute at least 280 grams of crack cocaine. The Government notified Sullivan of its intent to seek an enhanced sentence under 21 U.S.C. § 841(b)(1)(A), which would have had him facing a mandatory life sentence due to his two prior felony drug convictions and the drug weight involved in the conspiracy.

The Government then extended a proposed plea agreement to Sullivan's counsel providing for Sullivan to plead guilty to the conspiracy count, an agreed sentence of 26 years' imprisonment, and the Government's reliance on only one of his prior felony drug convictions for purposes of sentence enhancement. Sullivan accepted the plea offer, providing for a sentence of 26 years'

imprisonment pursuant to Fed.R.Crim.P. 11(c)(1)(C), on March 6, 2014, after a lengthy plea colloquy. The document further provided the parties' agreement that Sullivan was only eligible for a two-level decrease for acceptance of responsibility, was responsible for at least 2.8 kilograms but less than 8.4 kilograms of crack cocaine, and was eligible for a four-level increase for role in the offense. That being said, there was no agreement as to Sullivan's total offense level or criminal history category. Despite an advisory guideline range of 360 months to life, Sullivan was sentenced to 312 months' imprisonment pursuant to the agreed term agreement.

Sullivan now brings this § 2255 motion in which he argues that his guilty plea was not knowingly and voluntarily made due to counsel's ignorance of relevant law . The Government has filed its response, and this Order follows.

**DISCUSSION**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993), *citing Scott v. United States*, 997 F.2d 340 (7th Cir. 1993).

A § 2255 motion is not, however, a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S.Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2)

nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710-20 (7th Cir. 1994).

Sullivan would appear to be barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. So long as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced. Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144-45 (7th Cir. 1999) (finding that the right to appeal can survive a waiver where the agreement itself is involuntary, the trial court relied on a constitutionally impermissible factor, or the sentence exceeded the statutory maximum). The validity of the appeal waiver depends on whether the waiver was "express and unambiguous" and whether the record clearly shows that the waiver was made "knowingly and voluntarily." United States v. Woolley, 123 F.3d 627, 632 (7th Cir. 1997)

Sullivan attempts to void the plea agreement and waivers contained therein by claiming that he received ineffective assistance of counsel. The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The

courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. Woolley, 123 F.3d at 635. "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" United States v. Ryan, 986 F.Supp. 509, 513 (N.D.Ill. 1997), *citing* Key, 806 F.2d at 139; *see also* McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, Sullivan argues that his plea (which included waivers of the right to bring a direct appeal and collateral attack) was not knowingly and voluntarily entered into as a result of ineffective assistance of counsel. Specifically, he claims that he repeatedly requested a requirement that his prison term be within a defined range or follow from a shared assessment that a particular range applied as provided by *Freeman v. United States*, 131 S.Ct. 2685, 2697 (2011), and insurance that he would be able to benefit from any amendment to the Guidelines that would reduce his offense level. But for counsel's advice that *Freeman* did not apply to him because he was a career offender, Sullivan claims that he would not have accepted the plea offer and caused himself to forfeit the opportunity to benefit from a reduction under Amendment 782.

Sullivan's counsel, Rob Alvarado, has filed an Affidavit in this matter. In the Affidavit, Attorney Alvarado states that there was no discussion about the inclusion of a guideline range when Sullivan rejected the first plea agreement; rather, following a lengthy discussion, Sullivan rejected the agreement because of the amount of prison time (288 months) and for personal family reasons.

Attorney Alvarado's Affidavit indicates that Sullivan's main objective was to achieve a lower term of imprisonment, which he unsuccessfully attempted to do. The Government had already agreed to lower the agreed sentence from 324 months to 288 months and drop a 2-level gun enhancement, which would potentially allow Sullivan to obtain a one-year sentence reduction for successfully completing the RDAP program. At no time did Sullivan state that he would accept the plea agreement if it would include a guideline range.

While Attorney Alvarado was preparing for trial, including going over the evidence with his client and discussing possible defenses, Sullivan asked if the plea agreement was still available and instructed Alvarado to tell the Government that he was interested in pleading guilty. The Government indicated that the agreement was still available but would not be considered timely and would require a 312-month term of imprisonment. The Affidavit states that Attorney Alvarado and Sullivan had another lengthy discussion about the proposal, and Sullivan accepted it. Again, he asserts that Sullivan's main objective was the amount of prison time, given that the alternative was life imprisonment if convicted of the most serious charges.

Sullivan did raise the issue of *Freeman's* applicability to his case sometime after rejecting the initial plea offer. Attorney Alvarado explained to him that as a career offender, § 3582 relief would not be available to him because no retroactive amendment to the guidelines would affect that status; he also advised Sullivan that the plea agreement being offered was non-negotiable. While neither plea agreement stated that Sullivan would be a career offender, both agreements noted the possibility that the Court could determine that he was a career offender, and the offers were both within the range that he would have faced as a career offender.

A review of the transcript of the plea hearing reveals that Sullivan had completed several years of college education. After a detailed discussion of the maximum sentence he could face,

Sullivan received a lengthy explanation of the waiver provision and its consequences during the plea colloquy. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver or penalty provisions, and hence, he has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Sullivan's waiver and guilty plea, as well as his competency.

When the Court accepted Sullivan's guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The pertinent portion of the record reveals the following colloquy between Sullivan and the Court after he was placed under oath:

THE COURT: . . . Mr. Alvarado, have you had a chance to go over the superseding indictment with Mr. Sullivan?

MR. ALVARADO: I have, Judge.

THE COURT: And do you believe any further reading or explanation is required?

MR. ALVARADO: No. We will waive that.

THE COURT: And are you ready then to proceed to the plea through the plea agreement as it pertains to the superseding indictment?

MR. ALVARADO: We are, Judge, and the plea is to Count 1 of the superseding indictment.

THE COURT: Okay. Which is conspiracy to manufacture, distribute, and possess with intent to distribute cocaine base?

MR. ALVARADO: Yes, Judge.

THE COURT: The plea also is -- okay, and Mr. Sullivan, is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Are you prepared to go forward, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Would you stand and raise your right hand please?

(The defendant was sworn.)

BY THE COURT:

Q. All right. Very good. Okay. Mr. Sullivan, you're now under oath. I'm going to ask you a number of questions about the plea agreement. We will go over it. If you have any questions or you do not hear me, please ask me to repeat it. If you answer my

questions, I can only assume that you heard it and/or understood it; fair enough?

A.    Fair enough.

Q.    Have you received a copy of the superseding indictment against you and have you had a chance to discuss your case fully with Mr. Alvarado?

A.    Yes, Your Honor.

Q.    Have you had a chance to read and discuss this plea agreement with Mr. Alvarado before you signed it?

A.    Yes, Your Honor.

Q.    Do you think that you understand the terms of the plea agreement?

A.    I fully understand them, Your Honor.

Q.    Does the plea agreement represent the entire understanding that you have with the government?

A.    Yes, Your Honor.

Q.    Has anyone made any promises or assurances to you that are not in the plea agreement in order to get you to plead guilty?

A.    No, Your Honor.

Q.    Has anyone threatened you in any way to get you to accept this plea agreement?

A.    No, Your Honor.

Q.    The offense you are pleading guilty to is a felony offense. And if your plea is accepted, you will be adjudged guilty of that offense and that adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of a firearm. Do you understand that?

A.    Yes, I do, Your Honor.

Q.    Page two then, paragraph five says that you're going to plead guilty to Count 1.  Paragraph 7 are the elements of the charges against you which the government would have to prove beyond a reasonable doubt. First, the conspiracy in Count 1 existed. And second that you knowingly became a member of the conspiracy with an intention to further the conspiracy, and that is, as charged, the conspiracy to manufacture, distribute, and possess with the intent to distribute cocaine base. Do you understand the elements of the charges against you?

A.    Yes, Your Honor.

Q.    And that the government would have to prove those beyond a reasonable doubt before you could be convicted?

A.    Yes, Your Honor.

Q.    There is, further in paragraph seven, to establish the mandatory minimum sentence of 20 years and to increase the statutory maximum term of imprisonment to life, the United States would have to prove beyond a reasonable doubt that the conspiracy involved at least 280 grams of cocaine base and that the amount of cocaine base attributable to you through your conduct and the conduct of your co-conspirators was reasonably foreseeable to be 280 grams.   Do you understand that, sir?

A.    Yes, Your Honor.

Q.    All right.  Paragraph 8, it indicates that only one prior felony drug conviction will be relied upon for the purpose of enhancing your sentence.  That would mean that the crime you're pleading guilty to carries at least 20 years in prison and up to life in prison, a fine of up to $20 million, at least ten years and up to a lifetime of supervised release, a $100 special assessment, and the forfeiture of items that are going to be listed in the forfeiture which we will address those in a little bit.  Do you understand that?

A.    Yes, I do, Your Honor.

Q.    Supervised release term has its own terms and conditions.  Any violation of those terms and conditions could result in your supervised release period being revoked and you being imprisoned for all or part of the supervised release period without credit for time previously served.    Do you have any questions about that?

A. No, Your Honor.

Q. Restitution, I don't know if that's at issue or not. If it is at issue, it is something that will be determined at a sentencing hearing, that is, if there are any victims or costs that are associated under the Restitution Act that I should impose. I will be made aware of those. Both sides will have an opportunity to be heard. I will make that determination at the sentencing. Do you understand that?

A. Yes, Your Honor.

Q. Paragraphs 11 and 12 talk about appeal rights and your waiver of those rights and rights to collateral attack and the waiver of those rights. Federal law affords you a right to appeal the final decision of the district court including the conviction and/or the sentence imposed. Paragraph 11 goes on to tell me that you understand these rights of appeal; that you have thoroughly discussed these with Mr. Alvarado; that you knowingly and voluntarily waive your right to appeal any and all issues relating to this plea agreement to the conviction and to the sentence so long as this sentence of imprisonment is 312 months and the amount of any fine or restitution and term of supervised release are served within the maximum provided in the statutes of conviction. Do you understand that?

A. Yes, Your Honor.

Q. And that you're doing this in order to enter into this agreement with the government. Do you understand that?

A. Yes, Your Honor.

Q. Paragraph 12 discusses a different type of post-conviction attack. You have the right to attack the conviction and/or the sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States, or that you received ineffective assistance from your attorney, or that the Court was without proper jurisdiction, or that the conviction and/or the sentence was otherwise subject to collateral attack. This paragraph again goes on to tell me that you fully understand this right that you have, that you have discussed this thoroughly with Mr. Alvarado, that you knowingly and voluntarily waive this right to collateral attack the conviction and/or the sentence with one exception, and that

is you may raise on collateral attack the claims which relate directly to the negotiation of the waiver. Do you understand that?

A.      Yes, Your Honor.

Q.      Other than that you waive this right in order to enter into this agreement with the government; is that correct?

A.      Yes, Your Honor.

Q.      Okay. Now I understand that this is an agreement to 312 months; is that your understanding?

A.      Yes, Your Honor.

Q.      If I don't accept this agreement, you will have a right to withdraw your guilty plea. Do you understand that?

A.      I do, Your Honor.

Q.      Nonetheless though, a presentence report is going to be ordered and there is going to be a calculation of the advisory sentencing guidelines as we are required to do. Okay? And those advisory sentencing guidelines will set forth what I'd ultimately determine the sentence would be other than this if it were not for this plea agreement. Do you understand that?

A.      I understand that.

Q.      So I'm pretty sure that you and Mr. Alvarado have had a chance to discuss how the Sentencing Guidelines might apply, I would assume, in negotiating this deal here; is that correct?

A.      Yes, Your Honor.

THE COURT:      Mr. Alvarado, when you had these discussions, can you tell me where you thought the ballpark might be?

MR. ALVARADO:   Certainly. Your Honor, if my client was not facing mandatory life in prison, he would be considered a career offender under the Sentencing Guidelines. Therefore his guideline range would be 262 to 327 months.

- 11 -

BY THE COURT:

Q. All right. Mr. Sullivan, in spite of the agreement, the guidelines have to be correctly calculated and so a probation report is going to be completed. You, Mr. Alvarado, and Mr. Walters would you have an opportunity to review that report and challenge any reported facts as reported by the Probation Office. So, if there had been no agreement as to what the sentence would be then any estimate Mr. Alvarado gave you might be different from the sentence I might impose. Do you understand that?

A. I fully understand that.

Q. With that in mind then there are also, under different circumstances, opportunities for departures, not opportunities, but the law allows me to depart upward or downward from that range as it is determined depending on certain factors. So the imposition of a sentence could be greater or lesser than any guideline range sentence. Do you understand that?

A. I do understand that.

THE COURT: With that in mind, is there anything else the parties need to be addressed before I ask Mr. Sullivan how he pleads?

MR. WALTERS: Not from the United States, Your Honor.

MR. ALVARADO: Nothing else, Your Honor.

THE COURT: Okay. In that regard then, Mr. Sullivan, how do you plead to conspiracy to manufacture, distribute, and possess with the intent to distribute cocaine base?

THE DEFENDANT: Guilty.

THE COURT: I find that you are fully competent and capable of entering an informed plea; that you are aware of the nature of the charges and the consequences of the plea; that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

Gentlemen, given that this case has gone on for some time, and I'm very familiar with the amount of discovery and the amount of time that you have both put into this, and, Mr. Alvarado, you specifically with Mr. Sullivan, I have options to defer accepting this

>plea until after a Presentence Report is done, but I can also accept it today as well. Is there -- does anybody wish to be heard on me deferring? Otherwise, I'm willing to accept this.
>
>MR. WALTERS: Your Honor, we would ask that you accept it. I'm certain his guideline range is going to be come in within the range that we've agreed to. I don't think that there will be a basis for the Court to reject, but I leave it to your discretion, but we have no objection your accepting.
>
>MR. ALVARADO: Your Honor, we would ask that you accept the plea agreement today because we know for a fact that the advisory range would be 262 to 327.
>
>THE COURT: Okay. Then I will accept the plea. I will accept the plea. And you are now adjudged guilty of that offense.

During the presentence investigation, the probation officer determined that Sullivan would be a career offender as a result of his prior felony convictions. Sullivan objected to the proposed findings regarding the drug quantity, possession of a firearm during the offense, a pattern of criminal conduct as a livelihood, and role in the offense. He also argued that he was entitled to a two-level reduction pursuant to Amendment 782. The Government objected to this request, asserting that because this was an agreed term plea, "any amendment to the advisory guidelines that affects the base offense level will not have an impact on the agreed sentence of imprisonment." Sullivan then withdrew his request for the two-level reduction and objection to the role in the offense enhancement. After resolving the objections, the applicable guideline range was 360 months to life, well above the 312 months provided in the plea agreement, and Sullivan was sentenced to 312 months' imprisonment.

Even assuming that counsel's performance was deficient, Sullivan fails to demonstrate prejudice by showing that but for the alleged errors, the result of the proceeding would have been different. This is because the inclusion of either of the exceptions set forth in Freeman would not change the outcome in his case.

Although a final sentence may be modified when a defendant has been sentenced based on a sentencing range that was subsequently lowered by the Sentencing Commission, a reduction can only be made where the sentence was based on the subsequently lowered range and the reduction would not contravene the policy statements of the Sentencing Commission. United States v. Stevenson, 749 F.3d 667, 669 (7th Cir. 2014). In determining whether a sentence should be reduced, Sentencing Commission policy statements indicate that the court should substitute only the amended Guidelines, "leaving all other guidelines decisions made during the initial sentence unaffected." Id., at 670.

The Seventh Circuit has held that where, as here:

> [A] defendant's conduct-based offense level exceeds the career offender guideline . . . and the defendant is sentenced based on the higher offense level, his sentence cannot be later reduced below the career offender level, provided the original sentencing court found that he was a career offender.

Id. In this case, Sullivan's career offender guidelines would have been 292 to 365 months, whereas his offense based guidelines were 360 to life imprisonment, and the Court clearly found him to be a career offender. Under Stevenson, a further reduction would reduce his term below the career offender guidelines and therefore be inconsistent with the Sentencing Commission's policy statements. *See also*, United States v. Williams, 694 F.3d 917, 919 (7th Cir. 2012) (holding that a reduction would not be available to career offender where career offender offense level exceeded offense level as reduced under U.S.S.G. § 2D1.1.) As such, Sullivan would not be entitled to any further reduction even if his agreed term plea agreement had contained a Freeman exception, and he has failed to demonstrate prejudice from counsel's representation. He is therefore not entitled to the relief requested.

## CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). The petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

Here, no reasonable jurist could conclude that Sullivan's claim was not flatly contradicted by the law of this Circuit. Accordingly, this Court will not issue him a certificate of appealability.

## CONCLUSION

For the reasons set forth herein, Sullivan's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 [1] is DENIED. This matter is now terminated.

ENTERED this 2nd day of November, 2015.

s/ James E. Shadid
James E. Shadid
United States District Judge